```
              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF LOUISIANA
                   SHREVEPORT DIVISION

UNITED STATES OF AMERICA         NO. 17-CR-00232-01

VERSUS                           U.S. DISTRICT JUDGE FOOTE

YAN FANG LIANG                   U.S. MAGISTRATE JUDGE HORNSBY
```

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FILED ON BEHALF OF DEFENDANT, YAN FANG LIANG**

MAY IT PLEASE THE COURT:

**1.   Who are E.C., C.C.T. and S.Z.?**

   **A.   E.C.**

According to DHS Form I-213, dated June 20, 2017, E.C. was employed by "Sake Sushi Japanese Restaurant 2159 North Mall Dr Alexandria," Louisiana. Doc. 36-5, p. 4. E.C. allegedly was detained in association with a search warrant executed on 2023 Memorial Drive, Alexandria, Louisiana. *Id.* At that time, E.C. allegedly had "no immigration status that would allow him to remain in the United States." *Id.*

   **B.   C.C.T.**

According to DHS Form I-213, dated June 20, 2017, C.C.T, was employed by "Sashi Suki 2159 memorial drive Alexandria," Louisiana, since March 23, 2017. Doc. 36-6, p. 2. C.C.T. also allegedly was detained in association with a search warrant executed on 2023 Memorial Drive, Alexandria, Louisiana. *Id.*

C.C.T.'s Visa purportedly was valid until May 23, 2017, but did not grant C.C.T. permission to work. *Id.*

**S.Z.**

Additional information about S.Z. is unknown.

**2. Why is testimony from/evidence related to E.C., C.C.T., and S.Z. necessary?**

Ms. Liang believes that testimony from/evidence related to E.C., C.C.T., and S.Z. is unnecessary and should be precluded. However, the restaurant and the residence in Alexandria noted above are listed in the portion of the indictment herein that alleges a conspiracy to transport and to harbor certain aliens (aliens who had "come to, entered and remained in the United States in violation of law." Doc. # 1, pp. 1-3. It is believed the Government could seek to use evidence related to E.C., C.C.T., and S.Z. as 404(B) evidence or as intrinsic evidence of the alleged conspiracy, to establish motive, lack of mistake, knowledge, or similar issues.

**3. Given that the defendants had been charged with these offenses in state court in May of 2017 and the last criminal act charged in the federal indictment occurred in June of 2017, how does a September 2017 indictment constitute a "delay," and how does that alleged delay prejudice or impact the defense?**

Had this matter been filed in a timely manner or had the Government made defendants aware of its intent to deport or release any of these witnesses, undersigned counsel, state court trial counsel, or defendants could have moved for orders to

preserve necessary testimony or to secure material witness warrants on these witnesses under 18 U.S.C. § 3144 ("If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.").

Not only did Ms. Liang have this statutory right, but also she had the constitutional rights to confront witnesses against her and to subpoena witnesses. Moreover, her counsel has a duty to investigate the allegations herein.

The Government has made clear its intention to offer evidence and testimony based on "admissible" immigration documents. Assuming such evidence is admissible, Ms. Liang will be prejudiced as she will be unable to cross examine S.J.B.P.

C.C.T., L.M., L.T.G., E.C., or S.Z. on the statements allegedly made in such documents.

As of June 29, 2018, the Government informed defendants that S.J.B.P. "was ordered removed by an Immigration Judge on 7/12/2017, and removed from the U.S. on 8/09/2017"; that C.C.T. "was ordered removed by an IJ on 06/22/2017, and removed from the U.S. on 08/07/2017"; that L.M. was "ordered removed by an IJ on 03/14/201[8], and is currently unavailable"; that L.T.G. has "no record of removal, and is currently unavailable"; and that E.C. has "no record of removal, and is currently unavailable." Currently unavailable was defined as "[h]ave not been located." Only L.T.G. was identified as having been "served a trial subpoena for the initial trial date. *See* e-mails attached hereto.

Ms. Liang was arrested on April 6, 2017, in relation to the charges at issue herein. S.J.B.P. was removed from the United States by the Government on August 9, 2017, despite an ongoing state-court criminal matter, without any effort to preserve S.J.B.P.'s testimony for trial, and without any apparent effort to inform Ms. Liang that a witness against her was being deported, so that she could seek to subpoena S.J.B.P. or to preserve his testimony.

Similarly, C.C.T. was ordered removed on June 22, 2017, and was removed on August 7, 2017, despite an ongoing state-court

criminal matter, without any effort to preserve C.C.T.'s testimony for trial, and without any apparent effort to inform Ms. Liang that a witness against her was being deported, so that she could seek to subpoena C.C.T. or to preserve his testimony.

Additionally, L.M. was ordered removed by an IJ on March 14, 2018, despite this matter's ongoing status, without any effort to preserve L.M.'s testimony for trial, and without any apparent effort to inform Ms. Liang that a witness against her was being deported, so that she could seek to subpoena L.M. or to preserve his testimony.

L.T.G. was available when this matter was set for trial. The Government, however, inexplicably cannot locate L.T.G. at this time, even though it was able to subpoena him for the initial trial setting herein. That is, the United States, despite this ongoing criminal matter, without any effort to preserve L.T.G.'s testimony for trial, apparently has lost a witness against Ms. Liang.

Thus, at the very least, the Government's delay precluded Ms. Liang from invoking the protections provided by 18 U.S.C. § 3144. Therefore, the Government should not be allowed to use documentary evidence or testimony based thereon to establish "facts" that cannot be tested by the crucible of cross examination.

**<u>4.</u> 5.    What exculpatory information does the defense anticipate being provided by these alien witnesses; and even if not exculpatory, what information is likely to be provided by the alien witnesses that can be deemed material and favorable to the defense, as required by the precedence cited by the defense motions.**

The charges set forth in the indictment require knowing or reckless conduct by Ms. Liang.  The Government, on information and belief, will endeavor to use documents and testimony based on immigration documents, which courts have deemed admissible, to establish the knowledge or recklessness of Ms. Liang in relation to the charges herein.

The testimony of L.M., L.T.C., E.C., S.J.B.P., C.C.T., and S.Z. would allow Ms. Liang to explore their alleged interactions with her, their representations to her, if any, related to their status in the United States, their ability, if any, to communicate with her, their provision, if any, of documents related to their status in the United States, *etc.*  Moreover, to date, the Government has failed to offer any evidence that, pursuant to its authority recognized in *United States v. Perez*, 217 F.3d 323, 326 (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982) (5th Cir. 2000)), it deported any witnesses herein after "a good-faith determination that they possess no information favorable to a criminal defendant."); *accord United States v. Villanueva*, 408 F.3d 193, 200 (5th. Cir. 2005).

Further, the Government has failed to show that is has any alien witness available to offer testimony necessary to establish the material elements of the offense charged. Thus, as required in *Perez* court, Ms. Liang can establish the inability to subpoena L.M., L.T.C., E.C., S.J.B.P., C.C.T., or S.Z. necessarily must establish a due process violation, because employment- and status-related testimony from L.M., L.T.C., E.C., S.J.B.P., C.C.T., or S.Z. would not be "merely cumulative to the testimony of available witnesses," as there are **no such available witnesses**. 217 F.3d at 326 (citing *Valenzuela-Bernal*, 458 U.S. at 873; internal quotation marks omitted); *accord* in *Villanueva*, 408 F.3d at 200 ("With respect to a Fifth Amendment due process claim, a defendant must at least demonstrate that the testimony would have been material to his defense[;]" "[d]ue process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." (internal quotation marks and citations omitted).

The *Perez* court recognized that "[t]he sanction of dismissal is warranted only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." 217 F.3d at 326 (citing *Valenzuela-Bernal*, 458 U.S. at 873-74;

internal quotation marks omitted); *accord Villanueva*, 408 F.3d at 200. In *Perez*, the Fifth Circuit affirmed the denial of the motion to dismiss after recognizing that:

> Upon their arrest, the aliens were interviewed by the INS to determine whether they had any information relevant to the criminal trial. Of the eight aliens deported before the indictment was returned, six could not identify Perez from a photo spread. Several stated that they did not see Perez until everyone at the house was arrested. Additionally, two of the deported witnesses stated that no one at the house asked them for money; one told the INS agent that no guias were at the house at the time it was searched; and another stated that no one in the house was a "coyote." As Perez was not charged with smuggling aliens across the border or transporting them within the United States, the statements that there were no guias or coyotes in the house and that no one asked them for money is irrelevant to the issue whether Perez harbored or concealed from detection Aguilar-Jimenez and Chevez-Nolasco.
>
> Although the deported aliens who could not identify Perez or did not see him until their arrest may have provided testimony favorable to his defense, we reject his compulsory process and due process challenges because he has failed to show that their testimony was not merely cumulative of the testimony of available witnesses. Defense counsel was able to detain and depose six material witnesses, including Aguilar-Jimenez and Chevez-Nolasco. The district court did not err in denying these challenges by Perez.

217 F.3d at 326-27 (internal footnotes and citations omitted).

Unlike the defendant in *Perez*, Ms. Liang cannot detain or depose any material witness because of the Government's

unilateral decision to deport or to release all alien witnesses with relevant information.

In *Villanueva*, the United States Fifth Circuit found "the defendants-appellants failed to make a plausible showing that the repatriated witnesses would have provided testimony that was both material and favorable and reasonably likely to influence the jury. Therefore, the defendants-appellants have not demonstrated that the repatriation of the witnesses violated either their Fifth or Sixth Amendment rights." 408 F.3d at 200-01.

In reaching this conclusion, the *Villanueva* court noted that:

> To support their argument, defendants-appellants cite witness statements taken by Mexican authorities from the approximately 140 witnesses who were repatriated. Several of the witnesses either identify individuals other than the defendants as collectors of the smuggling fee or as guides, or the witnesses fail to identify one of the defendants as a guide.
>
> This evidence is not sufficient to satisfy the defendants-appellants' burden. The government presented the eyewitness testimony of a co-conspirator and two immigrants, each of whom identified the defendants as guides. The statements from other witnesses cited by defendants-appellants do not negate the testimony of the government's eyewitnesses. The statements, even if accepted by the jury as true, can only prove that other individuals, in addition to these defendants, acted as guides.

408 F.3d at 200.

Again, unlike in *Perez* or *Villanueva*, Ms. Liang cannot question any alien immigrants, because the Government unilaterally decided to deport or to release all of them without notice and without seeking to preserve their testimony.

Indeed, undersigned counsel is unaware of any case in which the Government has deported or lost all "aliens" allegedly involved in a case and proved its case solely by offering immigration documents or statements from government employees involved in the immigration process. Because of the Government abject failure to assure that L.M., L.T.G., S.Z., C.C.T., and/or S.J.B.P. had no potentially exculpatory evidence, Ms. Liang cannot affirmatively state that such testimony could be adduced at trial.

Given the charges related to S.J.B.P., L.M., L.T.G and its inclusion of discovery related to C.C.T. and S.Z., it is reasonable to believe that the government had knowledge that they too possessed knowledge relevant to the charges herein. Nonetheless, the Government failed to secure the testimony of any alien witness before deporting them or releasing them, conduct started before it filed the instant indictment and continued after the indictment.

Thus, unlike it did in *Perez* and *Villanueva*, the Government cannot rely on the fact that L.M., L.T.G., S.J.B.P., C.C.T., and S.Z. might offer merely cumulative testimony in addition to the

available witnesses. Moreover, unlike *Perez*, defense counsel cannot "detain and depose" ***any material witness***. Additionally, unlike *Villanueva* and based on the testimony to be adduced at the hearing on this motion, it is believed that the Government will be unable to offer any testimony from any alien to support the charges in the indictment. Finally, the inability to question L.M., L.T.G., S.J.B.P., C.C.T., and S.Z. would fatally infect the fairness of any trial by preventing Ms. Liang from offering exculpatory evidence from L.M., L.T.G., S.J.B.P., C.C.T., and/or S.Z. and/or subjecting them to meaningful cross examination.

As noted in Mr. Tang's brief, the deportation of a material witness may warrant a dismissal of the indictment. *Id.* In *United States v. Barajas-Chavez*, 358 F.3d 1263 (2004), the United States Tenth Circuit Court of Appeals held that a district court is required to dismiss the defendant's indictment because of the departure of potential witnesses when the defendant shows that "(1) the government acted in bad faith by allowing a witness with potentially exculpatory information to depart; and (2) the voluntary departure of the absent witness prejudiced him by eliminating testimonial evidence that 'would be both material and favorable to the defense.'" *United States v. Iribe-Perez*, 129 F.3d 1167, 1173 (10th Cir. 1997) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). In defining what evidence is "material," the Tenth Circuit Court of Appeals drew

out the distinction made by the Supreme Court in *Valenzuela-Bernal*, that "while the status of those aliens a defendant is charged with for transporting is relevant to his defense, the status of other aliens not named in the indictment as transportees is not." *Barajas-Chavez*, 358 F.3d at 1268.

Thus, as Mr. Tang argued, Ms. Liang has, at least, a constitutional right to cross examine and to confront L.T.G., L.M. and S.J.B.P., as they must be considered material witnesses. As to witnesses not listed in the Indictment, E.C., S.Z. and C.T.T., their testimony is material, given the government's failure to produce contact information for L.T.G., L.M., and/or S.J.B.P, as their testimony would not be cumulative to the testimony provided by other witnesses. *See United States v. Gomez*, 2014 WL 12648529 (S.D. Tex) (listing factors by which the Government may establish its good faith efforts to attempt to secure a witness' presence.)

**6.** **Conclusion**

WHEREFORE, YAN FANG LIANG, defendant, submits this supplemental memorandum and respectfully requests that this Court (1) hold a pre-trial hearing to determine whether, pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution, this Court should dismiss the indictment in this matter or, in the alternative, suppress as evidence in this case any statements

allegedly made by and/or any documents/evidence/testimony related to L.T.G., L.M., S.J.B.P., C.C.T., S.Z., and/or any other alien allegedly harbored or transported by Ms. Liang; and (2) thereafter issue an order, pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution, dismissing the indictment in this matter or, in the alternative, ruling as inadmissible at the trial of this case all evidence any statements allegedly made by and/or any documents/ evidence/testimony related to L.T.G., L.M., S.J.B.P., C.C.T., S.Z., and/or any other alien allegedly harbored or transported by Ms. Liang.

| | |
|---|---|
| 07/3/18 | /s/ Douglas Lee Harville |
| Date | Douglas Lee Harville, #27235 |
| | The Harville Law Firm, LLC |
| | P.O. Box 52988 |
| | Shreveport, LA 71135-2988 |
| | Telephone: (318) 222-1700 |
| | Telecopier: (318) 222-1701 |
| | lee.harville@theharvillelawfirm.com |
| | Counsel for Yan Fang Liang |

**CERTIFICATE**

    I HEREBY CERTIFY that on July 13, 2018, a copy of the above and foregoing, SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FILED ON BEHALF OF DEFENDANT, YAN FANG LIANG, was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to:

    AUSA Frederick Michael O'Mara
    United States Attorney's Office
    Western District of Louisiana
    300 Fannin Street
    Suite 3201
    Shreveport, Louisiana 71101,

by operation of the Court's electronic filing system.

    Shreveport, Louisiana, this 13th day of July, 2018.

            /s/ Douglas Lee Harville
            Douglas Lee Harville, #27235